# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| KENNETH EDWARD BARBOUR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U. S. Code 2403 (A) )<br>)<br>Defendant. ) | Case No. CV410-077 |

## REPORT AND RECOMMENDATION

Inmate-plaintiff Kenneth Edward Barbour has submitted for filing a completely nonsensical 42 U.S.C. § 1983 complaint against "U.S.C. 1915 United States Service Code 2403(b) [Etc.]." Doc. 1. A sample of his ramblings (in original, uncorrected form):

> Becoming constitutionally aware of the Attainders's by Constitution erection accountable to states maintained and provided via the two jurisdictional power code books or decisional process at this Constitutional prosecution noting them to be operational to treason. Creating treason defined via open Court confession testimonies retrackable to overt acts of 28 U.S.C. 1915(g) dismissing deprivation as a enforced right supporting unconstitutionality without respect to Constitutional rights a secured bounty or to create a fort of a arsenal of security of Equal Statutory, Constitutionality protection. . . .

Doc. 1 at 5; *see also* doc. 3 (complaint amendment "Claiming Constitutionality as by Constitutionality the Alcohol Network unauthorized to the impeachment state as a voice of commerce erecting a migrated importation convicted, charged, disqualification, treason. . . .").

Barbour, incarcerated in Virginia and subject to 28 U.S.C. § 1915(g)'s three-strike rule,[1] "demand[s] the misconduct treasuring in the noted books be killed, held to a attainder of no State right as to a qualification of money, weight, measures of jurdictal [sic] power as to Constitutional power. . . ." Doc. 1 at 7 ("VI. Relief"). This apparently followed his receipt of this Court's Transfer Order in *Barbour v. Ms. Staughbury*, CV410-044, doc. 5 (Report and Recommendation advising transfer to the Western District of Virginia of Barbour's February 19, 2010-filed, "vegetarian food menu" complaint against officials of his Virginia prison).

---

[1] 28 U.S.C. § 1915(g) prohibits inmates who file three frivolous lawsuits from utilizing § 1915(a)'s "installment plan" for paying the Court's $350 filing fee, except where they allege that they are in imminent danger of serious physical harm. Barbour is a three-striker. *In re Barbour*, 2010 WL 1141075 (4th Cir. Mar. 24, 2010) (noting his three-strike status while dismissing as non-final an appeal in which he sought to lay-represent another inmate); *Barbour v. Standford*, 2010 WL 1027478 at * 1 (W.D. Va. Mar. 19, 2010).

It is obvious that Barbour, upon being deemed a "three-striker" in his own judicial district, randomly chose this district to continue his recreational litigation, and gambled that no one would notice his § 1915(g) status. Worse, that district § 1915(g)-blocked him, so now he is misusing another federal court to back-door his malicious-filing assault on his home district: By manipulating this Court into automatically transferring (as it just did with *Staughbury*) his filings here, he winds up getting his frivolous-cases *filed*(rather than § 1915(g)-blocked) in his home district, thus cynically undermining that district's § 1915(g) bar.

In *Nazari v. U.S. Federal Probation/USPO*, 2009 WL 1322302, (S.D. Ga. May 11, 2009), *Skillern v. Edenfield*, 2009 WL 3756946 (S.D. Oct. 20, 2009), and *Patterson v. Lock*, 2009 WL 4506600 S.D. Ga. Dec. 3, 2009), this Court recounted the various ways in which malicious criminals and the mentally unbalanced clog the courts and waste a precious public resource. In *Wilkerson v. Statesboro Police Dep't*, 2009 WL 4609603 (S.D. Ga. Dec. 2, 2009), it presented a remedy:

> [F]or the next six months Wilkerson should be barred from filing any more lawsuits until she first posts a $100 frivolity bond, from which the Court will subtract $100 for the next frivolous lawsuit that she files. And if that does not work, then stronger remedies

may be required. *See Chapman v. Executive Committee of U.S. Dist. Court for N. Dist. of Illinois*, 324 F. App'x 500, 502 (7th Cir.2009) (court executive committee's order directing destruction of any papers submitted either directly or indirectly by or on behalf of vexatious pro se litigant was not an abuse of discretion; order was not an absolute bar since it contained a provision under which the restriction might be lifted, and filing bar was also narrowly tailored to litigant's abuse of the courts). No litigant may clog this Court with repeated, frivolous filings.

*Id.* at * 2.[2] Thus, the malicious filer must pay $100 above and beyond

---

[2] Taking *Chapman* a step further, a district court imposed an extended monetary/filing sanction against a non-inmate serial filer in *Yancey v. Milwaukee County Sheriff*, ___ F. Supp. 2d ___, 2010 WL 446083 (E.D. Wis. Feb 2, 2010):

> In *Support Systems Int'l*, [*Inc., v. Mack*, 45 F.3d 185 (7th Cir. 1995)], the Seventh Circuit barred a plaintiff from filing any new suits (not just IFP) unless he paid previously imposed monetary sanctions; the court permitted the plaintiff to request review of the filing bar in two years from the date of the order. This court will adopt the imposition of a three year bar, but does not have any interest in receiving "requests for review" from Yancey. Thus, rather than impose a bar that plaintiff can request be lifted in three years, the court will impose a bar on IFP filings that automatically lifts in three years. At the same time, in order to deter further frivolous filings by Yancey, the court will also impose an order, effective for the next ten years, sanctioning Yancey $100 for every patently frivolous document filed with the court, and $500 for every case Yancey files that is dismissed as frivolous for lack of subject matter jurisdiction, untimeliness, or failure to state a claim--unless the judge so dismissing clearly states that there was a good faith argument against dismissal.

*Id.* at * 3. Of course, monetary sanctions can mean very little to inmate filers who zero out their inmate accounts. *See Skillern*, 2009 WL 3756946 at * 2 n. 5 ("The Eleventh Circuit has failed to address what post-*Miller* district courts can do to stop malicious "lifer" inmates with zero-prison-account balances from filing dozens of lawsuits a week by alleging "imminent harm" and thus forcing judges to § 1915(g)-screen and swat down filing after filing. Merely eating up a judge's time to do that

the Court's $350 filing fee or face *Chapman's* "auto-shred" result (i.e., the Clerk simply shreds whatever the litigant mails to the Court without presenting it to any judge). For each subsequent frivolous filing, the filer loses that $100 (hence, the taxpayers are made whole), an additional $100 bond is then required, and thus a "pay to play" premium ($100 on top of the $350 filing fee) hopefully acts to deter more such filings.

Wilkerson was not incarcerated. Barbour is. Criminal contempt sanctions can mean little to inmates, however.[3] And § 1915(g) obviously has not been deterring Barbour. So, the Court will try the $100 remedy first, then *Chapman's* "auto-shred" sanction. The Court therefore **DENIES** plaintiff Kenneth E. Barbour's motion for leave to proceed *in forma pauperis* (doc. 2) because he has failed to allege the "imminent harm" exception to § 1915(g). And, under the Court's inherent jurisdiction and power to protect itself against abusive litigants, the

---

much is the objective of the malicious serial filer: an otherwise-powerless inmate's satisfaction of knowing that, with taxpayer-funded pen, paper and postage, he can jerk someone around. Criminal contempt sanctions and fee-debt-based firewalls are obviously meaningless against malicious filers serving a life-with-no-parole sentence and owning a 'strategically zeroed-out' inmate account.").

[3] *See Kelly v. Null*, 2009 WL 4065040 at *3 (S.D. Ill. Nov 23, 2009 ) ("'If you sanction me, you won't get shit .... What you want, another year out me? Hell, I got life. So you'll get a dead body. Want that?'")

district judge should apply the same $100 pay-to-play bond upon him. Barbour, who otherwise has shown *no* connection to this district (he lists a Virginia prison address on his latest complaint, doc. 1 at 4) evidently believes he can continue his recreational litigation by simply throwing a dart at the judicial-district map and sending babbling nonsense through the mail, then have it judicially ricochet back to Virginia (via this Court's transfer Order), his home district.

That conduct ends *now*. Thus, any further filing (except a Notice of Appeal and associated IFP-on-appeal motion) unaccompanied by a $100 payment shall be automatically shredded by the Clerk without presentation to a judge on this Court. In that regard, any concern over Barbour's right of access to the courts would be unfounded, for he remains free, subject to § 1915(g), to litigate in his own district. And no amount of sympathy for the mentally unbalanced can justify the unchecked jamming of judicial channels with demonstrably demented musings.[4] Lunatics are simply not allowed to run the asylum.

---

[4] One may wonder what's in it for incarcerated, convicted criminals who send a steady stream of frivolous lawsuits into the court system. It is no great leap to deduce that they feel powerless but reap some sort of perverse satisfaction knowing

**SO REPORTED AND** RECOMMENDED, this 5 th day of April, 2010.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

that, with pen, paper and postage which is often paid for by one set of taxpayers (the State), they can force the judiciary (through which they passed on their way to prison) to have to react to them.